## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE R. PITTS**<br>        **LA. DOC #541023** | **CIVIL ACTION NO. 6:14-cv-3415** |
| **VS.** | **SECTION P** |
| | **JUDGE HAIK** |
| **WARDEN TANNER, RAYBURN**<br>**CORRECTIONAL CENTER** | **MAGISTRATE JUDGE HANNA** |

### <u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on December 8, 2014 by *pro se* petitioner Willie R. Pitts. Petitioner is an inmate in the custody of the Louisiana Department of Corrections incarcerated at the Rayburn Correctional Center in Angie, Louisiana.  Petitioner attacks his October 5, 2010 conviction for forcible rape entered by the Fifteenth Judicial District Court for Vermilion Parish, Louisiana, for which petitioner was sentenced to forty years imprisonment.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

A Vermilion Parish grand jury charged petitioner with the July, 2008 aggravated rape of Y.R., who at that time was a juvenile.  The rape occurred while the victim was living at the home of her aunt, Gwendolyn Campbell.  Petitioner was Ms. Cambell's live-in boyfriend.  Petitioner was alleged to have busted through the victim's bedroom door, lifted her nightgown, struck her in the face as she resisted his advances, and raped her.

On September 27, 2010, petitioner, assisted by counsel,  waived his right to trial by jury.  [rec. doc. 19-3, pg. 54-58].  On October 4, 2010, petitioner proceeded to a  bench trial before Judge Conque.  At the conclusion of the trial, petitioner was found guilty of the lesser included offense of forcible rape.  On March 28, 2011, petitioner was sentenced to forty years imprisonment.

On April 4, 2012, the Louisiana Third Circuit Court of Appeal affirmed petitioner's conviction and sentence.   Petitioner raised the following grounds on direct appeal:  (1)   insufficiency of the evidence; (2) improper waiver of trial by jury; (3) denial of petitioner's motion *in limine,* which sought introduction of evidence of the victim's prior sexual behavior, violated petitioner's right to present a defense and cross-examine his accuser; and (4) failure to grant a mistrial upon learning of an alleged discovery violation by the State, the failure to provide

photographs allegedly taken during the execution of a search warrant of petitioner's home. *State v. Pitts*, 87 So.3d 306 (La. App. 3rd Cir. 4/4/2012).

On October 26, 2012, the Louisiana Supreme Court denied writs without comment.  *State v. Pitts*, 99 So.3d 639 (La. 2012).

On February 27, 2013, petitioner filed an application for post-conviction relief in the Fifteenth Judicial District Court. [rec. doc. 19-2, pg. 29-52]. Petitioner unartfully asserted that he was denied the effective assistance of counsel because counsel (a)  failed to exercise judicial authority in stopping the prosecution's use of perjured testimony; (2) counsel failed to impeach or object to inconsistencies in victim's testimony; (3) counsel failed to seek forensic expert testimony for reliability of DNA and evidence testing; (4) counsel failed to subpoena witnesses; (5) counsel failed to conduct an investigation of the allegations and potential witnesses; and (6) failed to compel the prosecutor to disclose exculpatory evidence.  [*Id.*].  The trial court denied relief on April 11, 2013 without an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), finding in pertinent part as follows:

> The defendant failed to prove any 6th Amendment claim of ineffective assistance of counsel by Burton Guidry under *Strickland v. Washington,* 466 U.S. 668 (1984) as the defendant's allegations do not show there is a "reasonable probability" that but for Mr. Guidry's alleged unprofessional errors the defendant lists in his memorandum,

the result of the proceeding would have been different.

[rec. doc. 19-2, pg. 65].

Petitioner applied for writs in the Louisiana Third Circuit Court of Appeal. However, on July 16, 2013, the Third Circuit denied writs on the showing made because petitioner's writ application was deficient in that it did not comply with the requirements set forth in Louisiana Code of Criminal Procedure article 912.1(C) or Rule 4-5 of the Uniform Rule of the Courts of Appeal and Third Circuit Internal Rule 16. *State v. Pitts*, No. KH 13-00644 (La. App. 3rd Cir. 2013). Thereafter, petitioner re-submitted his writ application to the Third Circuit raising claims virtually identical to those raised in the district court. [rec. doc. 1-2, pg. 27-46]. On December 19, 2013, the Third Circuit denied writs finding the trial court did not err in denying petitioner's application for post-conviction relief. *State v. Pitts*, No. KH 13-00915 (La. App. 3rd Cir. 2013).

On October 3, 2014, the Louisiana Supreme Court denied writs without comment. *State ex rel. Willie R. Pitts v. State of Louisiana*, 2014-KH-0178, 149 So.3d 789 (La. 2014).

Petitioner filed the instant petition on December 8, 2014.  Petitioner's pleadings are disjunctive and difficult to decipher.  The claims presented herein are therefore unclear.  However, liberally construing the pleadings, it appears that

petitioner asserts the following claims for relief: (1) insufficiency of the evidence;

(2) ineffective assistance of counsel because counsel (a) failed to stop the State's

use of perjured testimony, presumably that of the victim, (b) failed to impeach and

object to the victim's inconsistent statements, presumably those made to the Nurse

Bonnie Grimsley, and the victim's uncorroborated testimony, presumably about a

stab in her bedroom comforter and that she had been hit and raped, (c) failed to

retain a forensic expert to provide "reliable" DNA testing, (d) failed to subpoena

defense witnesses to discredit and impeach the victim's testimony (J.W., the

victims's minor boyfriend with whom the victim was allegedly having sex and

who's erect penis allegedly appears in a text messaged photograph on the victim's

phone; Edith Campbell, the mother of the baby who the victim was holding prior

to the rape, who petitioner speculates was, contrary to the testimony of the victim,

at the residence at the time of the rape; Eldridge Harrison, the boyfriend of the

victim's older sister, who petitioner alleges would have testified that the victim

was coerced to say that petitioner raped her; Detective Jason Hebert regarding

what he heard on the victim's cell phone; and Detective R.J. Thibodeaux regarding

the photographs that he allegedly took of the victim's residence during the

execution of a search warrant), (e) failed to investigate the facts, evidence and

allegations against petitioner by not visiting with petitioner face to face for two

years while he was in jail, (f) failed to elicit favorable evidence, presumably by allowing the Nurse Grimsley to be dismissed following her testimony, thereby precluding the defense from eliciting testimony about the inconsistencies in the victim's statements to her and an opportunity for cross-examination, (g) failed to successfully prosecute a motion *in limine* for admission of evidence regarding the victim's sexual relationship with her minor boyfriend J.W. contained in the victim's cellular telephone, including text messages of a sexual nature and a texted photograph of J.W.'s erect penis, and (h) failed to successfully obtain a mistrial because of the State's alleged failure to provide photographs taken at the victim's residence during the execution of a search warrant; (3) that petitioner was not adequately advised of his right to jury trial and accordingly did not validly waive that right;  (4) that petitioner was denied the right to present a defense and to effectively cross-examine the victim because of the trial court's restrictions on the admission of evidence and permissible subjects of cross-examination of the victim regarding her sexual behavior with persons other than petitioner pursuant to the Louisiana rape-shield statute; and (5) that the trial court improperly denied a mistrial based on the failure of the State to provide photographs taken by police at the victim's residence during the execution of a search warrant.  Petitioner also complains that the State Court denied his post-conviction application without

holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A).

The State has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief [rec. doc. 19].  No Reply has been filed by petitioner.  This Report and Recommendation follows.

## <u>LAW AND ANALYSIS</u>

### *Standard of Review*

This *habeas* petition was filed on December 8, 2014; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and  *Williams v.*

---

[1]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .  exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

*Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[2] (noting that

AEDPA "placed a new restriction on the power of federal courts to grant writs of

*habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must

give deference to a state court decision for "any claim that was adjudicated on the

merits in State court proceedings" unless the decision was either "contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1),

---

[2]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

8

or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing  Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may

grant the writ only if the state court "identifies the correct governing legal

principle from . . . [the Supreme Court's] decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing*

*Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness.

*Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas*

court may not issue the writ "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. . . [r]ather, that application must

also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state

courts.  *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such

determinations to be correct; however, the petitioner can rebut this presumption by

clear and convincing evidence.  *Id.*  Thus, this Court must defer to the state court's

decision unless it was based on an unreasonable determination of the facts in light

of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2);

*Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.

2000).

In sum, "[a] state court's determination that a claim lacks merit precludes

federal *habeas* relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

**I. Sufficiency of the Evidence**

Given, the nature of petitioner's pleadings, petitioner's argument as to why there was insufficient evidence to support his forcible rape conviction are not clear.  Petitioner conclusorily alleges that the evidence was not "sufficient to prove each and every element of the crime of forcible rape, including penetration of the vagina of Y.R. and/or the requisite degree of force, beyond a reasonable doubt." [rec. doc. 5-1, pg. 18].  In various other places, petitioner alleges that the victim's statements were inconsistent, her testimony was "untrue" and that her credibility is questionable." [*Id.* at pg. 15 and 23].

In rejecting petitioner's sufficiency of the evidence claim on direct appeal the Louisiana Third Circuit Court of Appeal, extensively analyzed the evidence presented at trial, and found that the evidence was sufficient to support petitioner's

conviction under the federal standard set forth by the United States Supreme Court

in *Jackson v. Virginia.   State v. Pitts*, 87 So.3d 306, 309- 315 (La. App. 3rd Cir.

2012).

The Third Circuit expressly found sufficient evidence of penetration as

follows:

> the Court found  the victim's testimony that the Defendant had sex
> with her was not the only evidence of sexual intercourse. At trial, the
> victim confirmed that the Defendant forced himself into her, that he
> did have sex with her, and that she was certain of that fact.
> Additionally, the victim's testimony was corroborated by the
> testimony of the nurse and physician who conducted the physical
> examination and verified with photographs the physical evidence of
> significant trauma. The physician opined that the trauma was caused
> by sexual assault.

The Third Circuit found a sufficient degree of force to support forcible rape

as follows:

> The degree of force necessary to prove forcible rape was addressed by
> the court in *State v. Berniard*, 03–484, p. 10 (La.App. 5 Cir.
> 10/15/03), 860 So.2d 66, 73, *writ denied*, 03–3210 (La.3/26/04), 871
> So.2d 345:
>
> The difference between aggravated rape and forcible rape is the
> "degree of force employed and the extent to which the victim resists."
> *State v. Parish*, 405 So.2d 1080, 1087 (La.1981); *State v. Puckett*,
> 02–997, p. 10 (La.App. 5th Cir.1/28/03), 839 So.2d 226, 231. A
> greater degree of force is necessary to justify the more serious
> punishment imposed for aggravated rape. *State v. Jackson*, 437 So.2d
> 855, 858 (La.1983). The degree of force employed and the
> determination of the grade of rape is for the jury to decide. *State v.*

*Cepriano*, 00–213, p. 9 (La.App. 5th Cir.8/29/00), 767 So.2d 893, 899. Nonetheless, the mere fact the defendant was unarmed and the victim suffered no extensive physical pain or injury does not negate the possibility that an aggravated rape occurred. *Puckett,* 02–997 at p. 8, 839 So.2d at 231.

The victim's SANE report reflects that before raping her, the Defendant grabbed her by the neck and threw her against the wall. After dragging the victim by her hair, he grabbed her by the neck once more and threw her onto the bed. Bruises on the victim's neck were documented and photographed by Grimsley, and the photographs were admitted into evidence. The report also indicates that the victim tried to get the Defendant off of her and he slapped her continuously. When the victim threatened to call the police if he did not get off of her, the Defendant punched the victim in the face. When the victim broke free and attempted to escape through the front door, the Defendant stopped her by grabbing her hair. The victim also tried to escape through her bedroom window but was stopped again by the Defendant who had armed himself with a gun. The Defendant held the gun to her head and threatened to kill the victim and her loved ones if she told anyone. The victim's trial testimony also reflects that she tried to stop the Defendant by kicking him and that he slapped her repeatedly in the face.

Considering this evidence, the State clearly proved the victim was prevented from resisting through the use of force and threats of physical violence.

The Third Circuit rejected petitioner's argument regarding inconsistencies in the victim's testimony with either the SANE report or Detective Suire's report as follows:

As noted by this court in *State v. Waguespack*, 06–410 (La.App. 3 Cir. 9/27/06), 939 So.2d 636, 642–43, *quoting State v. Schexnaider*, 03–144, p. 9 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 456–57 " '[t]he fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence

accepted by the trier of fact insufficient.' " Also:

> "[T]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. '[T]he *Jackson* standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.' " [*State v.*] *Schexnaider,* [03–144, p. 9 (La.App. 3 Cir. 6/4/03),] 852 So.2d [450] at 457 (citations omitted), *quoting State v. Williams*, 00–981, p. 7 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 810, *writ denied*, 01–1377 (La.3/20/02), 812 So.2d 646. Furthermore, the testimony of the victim alone is sufficient to establish the elements of a sexual offense. *Id. State v. Willis*, 05–218, p. 15 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 378–79, *writ denied*, 06–0186 (La.6/23/06), 930 So.2d 973.

*Id.* at 643 (alterations in original).

Considering the evidence as a whole, we find the trial judge made a rational credibility determination in finding the victim's testimony to be reliable.

Under the appropriate standard of review, this court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, the Third Circuit's decision can not be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319.  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This court applies the *Jackson* standard "giving great weight to the state court's determination."  *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review.  *United States v. Zuniga-*

*Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991) *citing United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

Contrary to petitioner's position, as correctly noted by the Louisiana Third Circuit Court of Appeal, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992); *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (noting that it is the jury's responsibility to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").   Accordingly, "whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the government, is beside the point . . . ." *Greenwood*, 974 F.2d at 1458.   All credibility choices and conflicting inferences are to be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing Cyprian*, 197 F.3d at 740.  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

16

At the time of the offense, forcible rape was defined in La.R.S. 14:42.1 as follows:

> A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.[3]

Under Louisiana law, "[e]mission is not necessary and any penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient." *State v. Self*,  719 So.2d 100, 101 (La. App. 3rd Cir. 1998), *writ denied*, 734 So.2d 1229 (La. 1999) *citing State v. Bertrand,* 461 So.2d 1159, 1161 (La. App. 3rd Cir. 1984), *writ denied*, 464 So.2d 314 (La.1985).  Moreover, it is well established that the testimony of the victim alone is sufficient to establish penetration.  *See State v. Rives*, 407 So.2d 1195, 1197 (La. 1091); *State v. Wright*, 690 So.2d 850, 856 (La. App. 3rd Cir. 1997); *State v. Abbott*, 697 So.2d 636, 639 (La. App. 2nd Cir. 1997); *State v. Hubbard*, 708 So.2d 1099, 1104 (La.App. 5th Cir. 1998), *writ denied*,  723 So.2d 415 (La.1998).   Furthermore,  the testimony of the victim alone can be sufficient to establish the elements of a sexual offense even

_____

[3]Effective August 1, 2015, the offense was re-named "second degree rape."  *See* La. R.S. 14:42.1(C).

when unsubstantiated by physical evidence.  *State v. Alberto*, 665 So.2d 614, 622 (La. App. 5th Cir. 1995), *writ denied,* 670 So.2d 1237 (La. 1996); *State v. Ingram*, 688 So.2d 657, (La. App. 2nd Cir. 1997) ("The testimony of the victim alone is sufficient to prove the elements of the offense even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant."); *State v. Hotoph*,  750 So.2d 1036, 1045 (La. App. 5th Cir. 1999), *writs denied*, 765 So.2d 1062, 765 So.2d 1066 (La. 2000) ("The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense."); *State v. Hubbard*, 708 So.2d at 1104 ("[T]he testimony of the victim alone, unsubstantiated by physical evidence, is sufficient to support a conviction of rape.").  Finally, the difference between aggravated rape and forcible rape is the "degree of force employed and the extent to which the victim resists." *State v. Hanson*, 938 So.2d 1147, 1151 (La. App. 2nd Cir. 2006); *State v. Parish*, 405 So.2d 1080, 1087 (La. 1981); *State v. Jackson*, 437 So.2d 855, 858 (La. 1983).  A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape, while forcible rape may be sustained in cases involving minimal uses of force. *Id.* The degree of force employed and the determination of the grade of rape is for the jury to decide.

*Id.; State v. Puckett*, 839 So.2d 226, 231 (La. App. 5th Cir. 2003). However, "there is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts." *Jackson*, 437 So.2d at 858; *Puckett*, 839 So.2d at 231.

The evidence was summarized by the Third Circuit as follows:

The victim testified she was vaginally raped by the Defendant in July 2008, just days after her thirteenth birthday. At the time of the offense, she was living with her aunt, G.C. and the Defendant, who was G.C.'s boyfriend. She could not recall the exact date of the offense but believed she reported the offense two days after it occurred. The victim explained that the Defendant burst through her bedroom door, violently cursing at her and slapping her face with big rings on his fingers. She reacted by kicking him and trying to push him away, but eventually he grabbed a knife and stabbed at the bed as she struggled to get away from him. She testified that he forced himself inside of her and had sex with her. The victim said she kept a knife in her room because she was afraid of the Defendant.

With regard to previous incidents, the victim stated that the Defendant had assaulted her at least four times. On each occasion, the Defendant hit her in the face, cursed at her, and had sex with her. Sometimes he threw her against the wall and pushed her away from anything she could grab or away from the door to prevent her from escaping. He would stop her from resisting by restraining her arms or wrists and holding her down. The Defendant told the victim that he would kill her loved ones if she told anyone, and he would deny that it had happened.

A few days after the July incident, the victim reported the offense to her sister and then went to the hospital. While at the hospital, she gave her only statement regarding the offense to Bonnie Grimsley, the Sexual Assault Nurse Examiner (SANE). The statement corroborates

the victim's trial testimony, with minor discrepancies pertaining to factors such as the location of the knife and whether the Defendant kissed her mouth. More important, however, is the physical evidence of sexual trauma detailed in Grimsley's examination report, in Grimsley's trial testimony, and in the photographs taken in the course of the examination. The trauma included bruising, tears, abrasions, and swelling. In fact, the swelling was so severe, Grimsley called in Dr. Virginia Alfred, an OB/GYN, to help with the speculum exam. According to Dr. Alfred, the edema was caused by sexual trauma which did not occur with regular sexual activity but with very violent and aggressive sexual activity. The victim's injuries were consistent with sexual assault.

Detective Stan Suire with the Abbeville Police Department was the investigator in this case. He searched the residence about two days after the offense was reported. Three knives were recovered from the kitchen. No gun was recovered, although the victim had stated at the hospital that the Defendant had a gun and had held it to her head. Detective Suire inspected the bed where the offense occurred and observed a puncture mark in the comforter which could have been caused by a knife. The puncture mark was consistent with the knives recovered. Also, the hinges on the door to the victim's bedroom were damaged, as was the bolt on the opposite side of the door where it latched. On cross-examination, Detective Suire confirmed that the puncture mark in the comforter was not documented in his report. He also acknowledged that he did not photograph the damaged hinges and did not find any evidence of blood during his search of the victim's bed.

At trial, the victim was shown a comforter recovered from her home, and she identified it as the one on her bed on the day of the offense. A semen stain from the comforter was tested and matched the DNA profile of the Defendant with a reasonable degree of scientific certainty. The victim was also shown three knives, and she identified one of the knives as the one she had under her pillow on the day of the offense.

The Defendant testified on his own behalf and denied ever having sex with the victim. He stated that he began living with G.C. when the

victim was about ten years old. He characterized himself as the disciplinarian in the household, and stated that the victim may have been angry at him for punishing her by taking her phone and computer games or prohibiting her from doing things. However, both G.C. and the victim testified that the Defendant never punished the victim or disciplined her in any way. The Defendant attempted to explain the semen stain on the comforter by saying that he and G.C. had used the bed in the victim's room in the summer of 2008. He also suggested that other family members who cared for the victim after the assault were mad at him and at G.C. because of their planned move to Alabama and because G.C. had declined to give them money she had received from the Road Home Project.

G.C., testifying for the defense, described the Defendant as a great person and someone who always helped out with the children. Her children would go to him with their problems, and he was always there to guide them. Prior to the instant offense, no one ever related to her that the Defendant was doing anything inappropriate. G.C. maintained she would have known if anything was going on, because she was very close to her children and her niece, the victim. Contradicting the Defendant's testimony, G.C. stated that she received about $50,000.00 from the Road Home Project and that she gave each of the children some of the money. With regard to moving, G.C. explained that prior to the time of the allegation, she and the Defendant planned to move to Atlanta, not Alabama as stated by the Defendant. The victim and other family members were happy about the move. G.C. did not believe the victim's allegation against the Defendant at the time, and she stated at trial that she still did not believe it happened. G.C. maintained she would know if something was wrong with the victim.

*Pitts,* 87 So.3d at 310-312.

In light of the above, viewing the evidence in the light most favorable to the

prosecution as is required by *Jackson* and its progeny, the evidence presented at

trial was more than sufficient to sustain petitioner's forcible rape conviction on

federal *habeas* review.  Considering the "great weight" afforded to the state court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Although there were inconsistencies between the testimony of the victim and the information contained in the SANE report and Detective Suire's report, the victim was only thirteen years old and the trial judge presumably and properly found that those alleged inconsistencies are entitled to little, if any, weight.  The victim's substantive testimony was corroborated by the testimony of Ms. Grimsley, the SANE nurse, and Dr. Alfred, the physician, both of whom conducted a physical examination of the victim, the doctor opining that the significant trauma she found was caused by sexual assault.

Moreover, as he did in the Third Circuit on direct appeal, petitioner urges this Court to make credibility determinations, and more specifically, to find the victim's testimony not credible and accordingly, to weigh the evidence in his favor.  However, as recognized by the Third Circuit, on a sufficiency of the evidence review, it is not the province of a reviewing court to make credibility determinations or to review the weight of the evidence accepted by the trier of fact. *See Young, Garcia, Greenwood, Green* and *Jackson*, *supra*.

22

As found by the Third Circuit, although the trial judge could have rejected the victim's  testimony, and although the trial judge could have made contrary inferences from the evidence presented, he chose instead to credit the testimony of the victim.   Her  testimony establishes that petitioner penetrated her without her consent and that she attempted, without success, to stop petitioner from having sex with her, but was prevented from doing so by petitioner's use of force and threats. This testimony is more than sufficient to establish that a forcible rape occurred, even in the absence of any corroborating physical evidence, which is not the case here.  To the contrary, there was an abundance of physical evidence to support the victim's testimony, including the testimony of Nurse Grimsley and Dr. Alfred, the SANE report and photographs taken by Nurse Grimsley of the bruises on the victim's neck.  This court cannot find the testimony of the victim, which was obviously accepted by the trial judge, so incredible or insubstantial that, as a matter of law, it can be discounted.

For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

## II. Waiver of Jury Trial

Petitioner contends that he was not adequately advised of his right to jury trial and accordingly, did not validly waive that right. On direct Appeal, the Third

Circuit found no merit to this claim ultimately holding that petitioner "with the assistance of counsel, made a knowing and voluntary waiver of his right to a trial by jury." *State v. Pitts*, 87 So.3d at 315.  This conclusion was reached following an examination of the transcript of the September 27, 2010 hearing wherein petitioner waived his right to a jury trial based on the following facts:

> The transcript reflects that he was represented by counsel. Before accepting the waiver of his right to a jury trial, the trial court clearly confirmed that the Defendant understood his right and went a step further by inquiring about his reasons for wanting to waive his right. The trial court also offered the Defendant one last opportunity to discuss any questions he had with his lawyer or the court before waiving his right to a jury trial, which offer the Defendant declined.

*Id.* at 314.

Under the appropriate standard of review,  this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, the Third Circuit's decision can not be disturbed.

The Sixth Amendment right of the defendant to a jury trial in a criminal case is a fundamental constitutional right. *Duncan v. Louisiana*, 391 U.S. 145, 157–58, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Federal law governs whether a defendant has waived this right. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Under federal law, a defendant may waive his right to a jury

trial, provided that he does so voluntarily, knowingly, and intelligently. *See Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Singer v. United States*, 380 U.S. 24, 34, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Whether a defendant has effectively waived this right depends upon "the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942).  Neither the Fifth Circuit  nor the Supreme Court has defined any "fact-specific constitutional minima for a valid jury waiver," nor has either court "required a set colloquy before a jury waiver can be accepted." *Pierre v. Leger,* 495 Fed. Appx. 403, 410-411 (5th Cir. 2012) *citing Scott v. Cain*, 364 Fed. Appx. 850, 855 (5th Cir. 2010). However, in no case may a court presume that a defendant has waived his right to a jury trial from a silent record. *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709.

Here, the record is not silent. The transcript of the September 27, 2010 waiver hearing shows that petitioner was informed of his right to be tried by a jury or by a judge, and that he chose the latter.  Further, the manner in which the state court explained the jury right was more than adequate.  As found by the Third Circuit, the trial court clearly confirmed that petitioner understood that he had "an absolute right under the law to a trial by jury" and that only petitioner could give up that right. The court further verified that petitioner had discussed the differences between a jury and judge trial with his counsel.  Moreover, the court

25

confirmed that petitioner understood the consequences of a waiver, including that any penalty imposed would not be lighter if convicted by the court, and the court even required petitioner to explain his reasons for the waiver.  Finally, although not required, the trial court additionally offered petitioner one last opportunity to present any questions he had with his lawyer or the court before accepting the waiver. [rec. doc. 19-3, pg. 54-58].

The record is clear; petitioner voluntarily, knowingly, and intelligently waived his right to trial by jury.  Federal *habeas corpus* relief is therefore not warranted.

## III.  Rape Shield Statute/Right to Present a Defense and Cross-Examine Victim

Petitioner alleges that he was denied the right to present a defense and to effectively cross-examine the victim because the trial court denied his Motion in *Limine* thereby placing restrictions on the admission of evidence and permissible subjects of cross-examination of the victim regarding her sexual behavior with persons other than petitioner pursuant to the Louisiana rape-shield statute, Louisiana Code of Evidence article 412.

A state court's evidentiary rulings are not inherently suspect and are generally not cognizable on federal *habeas* review of a state conviction. *See*

26

*Estelle v. McGuire*, 502, U.S. 62, 67 (1991); *Wood v. Quarterman*, 503 F.3d 408,

414 (5th Cir. 2007); *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1983). Even

if incorrect, federal *habeas* relief may be granted only under exceptional

circumstances when the evidentiary ruling violates a specific constitutional right

or is so egregious that it renders the trial fundamentally unfair. *See Brown v.*

*Dretke*, 419 F.3d 365, 376 (5th Cir. 2005); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir.

1998).  A trial is fundamentally unfair only when there is a reasonable probability

that the verdict might have been different had the trial been properly conducted.

*Kirkpatrick v. Blackburn,* 777 F.2d 272, 279 (5th Cir.1985).  In this case, no such

constitutional violation has been demonstrated, nor has petitioner shown that the

exclusion of this evidence rendered his trial fundamentally unfair.

The Sixth Amendment guarantees an accused in a criminal prosecution the

right to be confronted with the witnesses against him. The primary purpose behind

this right is to secure for the defendant the opportunity for cross-examination.

*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).  Whether

rooted in the Due Process Clause of the Fourteenth Amendment or the

Compulsory Process or Confrontation Clauses of the Sixth Amendment, an

accused also has a constitutional right to present a defense. *Washington v. Texas*,

388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *United States v.*

*Scheffer*, 523 U.S. 303, 329 fn. 16, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).  The

right of an accused sex offender to present a defense and cross examine witnesses

is, however, balanced against the State's and victim's legitimate interests under

rape shield statutes which protect a victim of sexual assault from harassment and

invasions of privacy by having her sexual history made public. *See Michigan v.*

*Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991); *See also*

*Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)

(" the right to confront and to cross-examine is not absolute and may, in

appropriate cases, bow to accommodate other legitimate interests in the criminal

trial process").  Thus, courts may constitutionally impose reasonable restrictions

on a defendant's ability to confront adverse witnesses and present allegedly

relevant evidence in his own defense. *See Id.; Richmond v. Embry,* 122 F.3d 866

(10th Cir. 1997)*; Stephens v. Miller,* 13 F.3d 998, 1002 (7th  Cir.) (*en banc*), *cert.*

*denied*, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994); *Kittelson v. Dretke,*

426 F.3d 306, 319 (5th Cir. 2005) *quoting Davis v. Alaska*, 415 U.S. at  315, and

*Delaware v. Van Arsdall*, 475 U.S. 673, 679–80, 106 S.Ct. 1431, 89 L.Ed.2d 674

(1986) ("The Confrontation Clause does not guarantee defendants

cross-examination to whatever extent they desire. A trial judge has discretion to

'impose reasonable limits on cross-examination based on concerns about

28

'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' "); *Hale v. Quarterman*, 2009 WL 1651504, *5 (N.D. Tex. 2009); *Green v. Stephens*, 2014 WL 6663680, *10 (N.D. Tex. 2014) *citing Kittelson, supra*.

Prior to trial, petitioner's counsel filed a Motion in *Limine* seeking to introduce the victim's cell phone records which included text messages relating to discussions of sex with another minor (presumably the victim's boyfriend) as well as a text messaged  photograph of an erect penis of an individual other than the defendant (again presumably the victim's boyfriend) which was believed to have been taken by the victim approximately one month prior to her rape, maintaining that the evidence was admissible under Louisiana Code of Evidence article 607(D) to show bias, interest or corruption, notwithstanding the prohibition against such evidence contained in the rape shield statute, Louisiana Code of Evidence article 412. [rec. doc. 19-4, pg. 63-64].  On the morning of trial, the trial court denied this Motion finding that the evidence did not fit under either of the two exceptions to the rape shield statute, to show consent or to show the accused is not the source of the semen, providing that the evidence relates to an instance occurring within 72 hours of the offense. [rec. doc. 19-4, pg. 87-95].   In so ruling, the Court noted, however, that counsel could present evidence to show bias, interest or corruption, but could not "use reputation or opinion evidence of past sexual behavior . . .  to

29

show that [the victim] had sex with other persons . . . ." [*Id*. at pg. 92].

On direct appeal, the Third Circuit found no merit in petitioner's argument, holding the "evidence is clearly the type of evidence prohibited by Article 412, and any related questions would suggest that the victim was sexually active." *Id*. The Court further found, that petitioner had "not shown how such evidence would show bias or interest on the victim's part, leading to a motive for fabricating a story against [him]." *Pitts*, 87 So.3d at 316.

Petitioner has not demonstrated that the state courts' disposition of the claim was contrary to, or an unreasonable application of,  clearly established Supreme Court precedent, or that the courts' factual determinations were unreasonable in light of the State court record.  Federal *habeas corpus* relief may therefore not be granted.

In the present case, since petitioner denied having sexual intercourse with the victim this evidence is not relevant to show the victim's consent. Furthermore, since the evidence was not of the victim's sexual conduct which occurred near the time of the offense in question, it was not relevant to show that the source of the semen was from sexual intercourse with some other man.  To the contrary, the evidence sought to be admitted was, as found by the Third Circuit, instead designed to demonstrate that the victim was sexually active, without sufficient causal connection to any purported bias on the victim's part to demonstrate a

motive on the part of the victim to fabricate a story against petitioner.  Stated differently, the excluded sexual evidence is far too speculative and conjectural to be more than marginally probative on the issues of bias, motive or fabrication.  As such, and for the reasons which follow, the complained of ruling constitutionally imposed  reasonable restrictions on petitioner's ability to confront the victim and present allegedly relevant evidence in his own defense. *Michigan v. Lucas*, *Chambers v. Mississippi*, *Richmond, Stephens,  Hale* and *Green, supra*.

Furthermore, any error by the state courts in disallowing the evidence sought to be admitted by petitioner did not render petitioner's trial fundamentally unfair.  The evidence petitioner sought to introduce involved sexual conduct between the victim and her boyfriend.  The Court assumes that the intended use of the evidence was to show that the victim was upset and angry with petitioner for having been punished for her inappropriate conduct, in order to establish a motive for the victim to have fabricated charges against petitioner.  There is nothing, however, about the alleged sexual nature of the relationship between the victim and her boyfriend which was crucial or highly significant to petitioner's defense.  The trier of fact needed only to know that the victim was angry with petitioner or her aunt, and that this was her motive for bringing the charges against petitioner.  The sexual details of the victim's relationship with her boyfriend were not relevant

31

nor probative on this issue, and would have served no purpose but to embarrass the victim and sully her reputation, the very thing the state rape shield statute is designed to prevent.

The record demonstrates that trial court's evidentiary ruling disallowed only evidence of the sexual nature of the relationship between the victim and her boyfriend, and did not prevent petitioner from pursuing a defense that the victim had a motive to fabricate charges against petitioner.  Indeed, under the trial court's ruling counsel was not precluded from introducing motive evidence, and such evidence was, in fact, introduced through the testimony of the victim and other witnesses, namely, the victim's aunt, Gwendolyn Campbell.

On cross-examination counsel elicited testimony from the victim that she got in trouble with her boyfriend when he was found in the house in the morning and that he had been "sneaking in the house." [rec. doc. 19-5, pg. 8-9]. The victim additionally admitted that she "got in trouble" for stealing at the mall, and for fighting at school with another female student and for hitting a teacher who tried to break up the fight, although she denied that petitioner disciplined her for these events. [*Id.* at pg. 7-8].  Moreover, the victim admitted that she was not happy about petitioner and her aunt's plan to move to Atlanta. [*Id*. at 6-7].

Petitioner testified that both he and the victim's aunt would reprimand and punish the victim by taking away her phone, not allowing her on the computer and

restricting her travel and right to do things when she got in trouble.  Without

mentioning the victim's sexual activity, petitioner testified that the victim had done

"real crucial things", including fighting at school, fighting with a teacher, stealing

from the mall and fighting in the streets on a regular basis, and that he and the aunt

handled those situations taking away privileges until the victim "learn[ed] how to

act civilized." [rec. doc. 19-6, pg. 30-31].  He also testified that the victim didn't

want to move to Atlanta and leave her friends. [*Id*. at pg. 42].

     The victim's aunt, Gwendolyn Campbell, testified that just before the victim

complained of petitioner raping her, the victim had been punished for getting into

trouble at the mall, at school and at home, specifically, that the victim had broken

the rules of house by "bringing people into the house that weren't supposed to be

there."  [*Id*. at pg. 72-74].  On cross-examination by the State, Ms. Campbell

expounded on the incident in the home testifying that the victim was caught in her

bedroom with a teenage boy. [*Id*. at pg. 76].  Ms. Campbell testified that the victim

was angry at being punished for these infractions, and on one such occasion, was

so angry that she had actually swung at her aunt in retaliation. [*Id*. at pg. 73-74].

     In closing, defense counsel argued that the victim had a motive for

fabricating a story against petitioner, linking the victim's sexual assault complaints

against petitioner to the same time frame when she was getting in trouble with the

law, at school and "with some other person", adding that the victim had also been told that she may be moving out of town.  He therefore asked the Court to use common sense in reaching a verdict. [*Id*. at pg. 84-85].

Under these circumstances, the complained of ruling constitutionally imposed  reasonable restrictions on petitioner's ability to present marginally relevant evidence in his own defense and did not render petitioner's trial fundamentally unfair.  There simply is no reasonable probability that the verdict might have been different had the Court allowed the sexual details of the relationship between the victim and her boyfriend to have been admitted. *Kirkpatrick, supra.*

Petitioner is not entitled to relief on this claim.

## IV.  Denial of a Mistrial

Petitioner contends that the trial court improperly denied a Mistrial based on an alleged discovery violation by the State, namely, the failure of the State to provide photographs allegedly taken by police at the victim's residence during the execution of a search warrant.  These photographs presumably may have depicted the damage to the door hinges of the victim's bedroom door and a knife puncture in the victim's bedroom comforter.

This claim was addressed by the Third Circuit on direct appeal, which found

34

the claim "without merit." *Pitts*, 87 So.3d at 317.  In so holding, the Third Circuit noted that "at trial, Detective Suire stated he was 'pretty sure' he had taken pictures of pertinent items in the victim's home. . . ." *Id.*  However, "[l]ater in his testimony, Detective Suire stated that another officer, Lt. R.J. Thibodeaux, must have photographed the comforter and the door because he had the camera." *Id.* Further, the appellate court noted that "[t]he State stressed that Detective Suire assumed that photographs were taken, but he had no personal knowledge of any photographs. . .",  "that Detective Suire testified he had not seen any photographs from the crime scene" and that the alleged photographs "were not found in Detective Suire's case file." *Id.*  Therefore, although the trial court found the motion for mistrial premature, the appellate court concluded that  petitioner had not shown the State failed to comply with discovery procedures.

Under the appropriate standard of review,  this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, the Third Circuit's decision can not be disturbed.

During direct examination of Detective Suire, the following testimony was elicited with respect to the execution of a search warrant at the victim and petitioner's residence:

Prosecutor: . . . the opposite side of the door where it latches, did that appear to be somewhat damaged as well?
Detective: Yes.
. . . .
Detective: I'm pretty sure I did take pictures of all that.

[rec. doc. 19-5, pg. 89].

On cross-examination, Detective Suire testified as follows:

Detective: I was assuming the R.J. [Thibodeaux] took photos of everything.
Mr. Guidry: That's not in your report either.
Detective: No.  It only says photographs were taken.
Mr. Guidry: Does it say where?
Detective: No.
Mr. Guidry: Do you know what photographs we may or may not have had?
Detective: No. R.J. was the evidence custodian.  I'm assuming he put it in evidence.
Mr. Guidry: . . . in other words, all what's in front of you now in the courtroom that's been admitted as evidence is all there is?
. . . .
Mr. Guidry: I', talking about physical evidence y'all collected.
Detective: We have physical photographs of the little girl's injuries.
Mr. Guidry: I'm hoping that R.J. has some photographs of everything.
Mr. Guidry: You don't know?
Detective: No, I don't know.
Mr. Guidry: So, the fact that you say there are photographs, you don't really know if there are any?
Detective: That's correct.

[rec. doc. 19-5, pg. 93-94].

With respect to the comforter puncture, after the Detective was unable to identify the alleged knife puncture on the comforter, the following testimony was elicited on cross-examination:

Detective: I'm sure it would have been photographed.  Again, that
was Lieutenant Thibodeaux with the camera.
Mr. Guidry: So, if there's no photographs, nothing on here that you
identified and you marked off as being the one?
Detective: Correct.

[rec. doc. 19-5, pg. 99-100].

Finally, on re-direct, Detective Suire testified:

Prosecutor: You submitted the case file in this case, did you not?
Detective: Yes.
. . . .

Prosecutor: Do you have any personal knowledge if R.J. submitted
any photographs?
Detective: I would assume he did.
Prosecutor: That's not what I asked you. I'm not asking you to
assume.  I'm asking you if you know that he submitted photographs.
Detective: No I don't know that for a fact.
Prosecutor: So you don't know if any exist?
Detective: I recall him taking pictures.  That's all.
Prosecutor: But you do not know if they were replicated or preserved
in any way?
Detective: Correct.
. . . .
Prosecutor: And your testimony here today is as you recall it from memory?
Detective: Yes.
Prosecutor: With respect to those particular items you saw in the
house which are not reported nor photographed?
Detective: Yes.

[rec. doc. 19-5, pg. 106-108].

Defense counsel, Mr. Guidry, moved for a mistrial based on Detective

Suire's testimony that there were potentially photographs that were not provided to

the defense, arguing surprise, while admitting the motion was possibly premature. The State argued in opposition that Detective Suire assumed that photographs were taken because they usually take photographs, but that he had no personal knowledge that any photographs existed, and that no photographs were found in Detective Suire's case file. The trial court ruled that the motion was premature at that point. [rec. doc. 19-5, pg. 108-109].  The issue was not re-visited.

During closing argument, Mr. Guidry focused on the "evidence we have not seen that we could have seen" arguing "significant gaps in the evidence" and that the State had not proven its case. [rec. doc. 19-6, pg. 84, 87-88]. In support, he specifically noted Detective Suire's testimony regarding the damages to the victim's door, pointing out that this was not in his report, nor were there any corroborating photographs presented. [rec. doc. 19-6, pg. 85].  Mr. Guidry likewise argued that there was no corroboration regarding the alleged stab wounds to the comforter, which counsel pointed out, he still could not see on the comforter.  [rec. doc. 19-6, pg. 86].

Generally, under Louisiana law, determination of whether a mistrial should be granted is within the sound discretion of the trial court, and that determination will not be disturbed absent an abuse of discretion.  *See State v. Fugler,* 737 So.2d 894, 895 (La. App. 1st Cir. 1999) *citing State v. Berry,* 684 So.2d 439, 449 (La.

38

App. 1ˢᵗ Cir. 1996); La.C.Cr.P. art. 729.5 (A), and 775.  A mistrial is a drastic

remedy and is only warranted when the defendant has suffered substantial

prejudice, depriving the defendant of a reasonable expectation of a fair trial.

*Fugler,* 737 So.2d at 895; *Berry,* 684 So.2d at 449;  *State v. Edwards,* 420 So.2d

663, 679 (La. 1982); *State v. Harris*, 812 So.2d 612, 617 (La. 2002).

In order to obtain federal *habeas corpus* relief on grounds of trial error, the

petitioner must show more than prejudice to his substantial rights.  *Kirkpatrick v.*

*Blackburn,* 777 F.2d 272, 279 (5ᵗʰ Cir. 1985).  The petitioner must establish that

the trial error was not merely an abuse of discretion, but also was so grave as to

amount to denial of his constitutional right to due process, that is, that the error

rendered the trial fundamentally unfair.  *Id.*  A trial is fundamentally unfair only

when there is a reasonable probability that the verdict might have been different

had the trial been properly conducted. *Id.*

In this case, petitioner has not established that the denial of his motion for a

mistrial constituted an abuse of discretion, or that the denial made his trial

fundamentally unfair.  The trial court acted within its discretion when it denied

petitioner's motion for mistrial, and the denial of this motion did not render

petitioner's trial so fundamentally unfair so as to violate petitioner's due process

rights.  Further, petitioner has not established  sufficient prejudice amounting to a

denial of fundamental fairness.  To the contrary, the denial of a mistrial based on the State's alleged discovery violation enabled defense counsel to argue that Detective Suire's testimony was uncorroborated by physical evidence and supported defense counsel's argument that the State had not proven its case. Moreover, in light of the overwhelming evidence of petitioner's guilt, discussed in detail above, the court can not find that petitioner has demonstrated that there was a reasonable probability that the grant of a mistrial would have resulted in a different verdict. Therefore this claim has no merit.

## V.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the

40

circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).

Courts may "not find ineffective assistance of counsel merely because [the court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Rather, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.[4] A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d

631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.

A petitioner must affirmatively prove prejudice.  *Deville*, 21 F.3d at 659;

*Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d

1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome

would have been different "fall far short of satisfying *Strickland'*s prejudice

element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a

different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179

F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and

prejudice, must be satisfied, "an ineffective assistance contention may be rejected

---

[4]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not
warrant setting aside the judgment of the criminal proceeding if the error
had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S.
361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability exists if the probability is
sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there
is reasonable probability that absent the errors the fact-finder would
have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

42

on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

The state trial court rejected all of petitioner's ineffective assistance of counsel claims, *in globo*, finding that petitioner had failed to carry his burden under *Strickland*.  [rec. doc. 19-2, pg. 65]. The Louisiana Third Circuit Court of Appeal found no error in the trial court's ruling. *State v. Pitts*, No. KH 13-00915 (La. App. 3rd Cir. 2013).  For the reasons which follow, under the applicable standard of review, the Louisiana state courts disposition of petitioner's ineffective assistance of counsel claims should not be disturbed.

**(a) Use of Perjured Testimony**

Petitioner alleges that counsel was ineffective for failing to stop the use of perjured testimony, presumably that of the victim.  This claim is without merit. Petitioner has failed to demonstrate that the victim's testimony (or the testimony of

any other witness, including Nurse Bonnie Grimsley) constituted perjury.

Contradictory testimony from witnesses, inconsistencies within a witness'

testimony, and conflict between reports, written statements and the trial testimony

of witnesses do not constitute perjury.  *United States v. Jackson,* 2015 WL

5840073, *6 (W.D. La. 2015) *citing Ruiz v. Cockrell*, 2003 WL 22038350, *9,

adopted by 2003 WL 22231294 (N.D. Tex 2003), *Koch v. Puckett*, 907 F.2d 524,

531 (5th Cir.1990), *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001)

("Conflicting or inconsistent testimony is insufficient to establish perjury.") and

*U.S. v. Guillory*, 2013 WL 4782211, *9 (W.D. La. 2013).  The fact that the

victim's testimony does not coincide with the testimony given by petitioner (or any

other witness including the SANE nurse, or is contradictory to her report) does not

make the victim's testimony false.  Rather, such testimony merely presents a

credibility question for the trier of fact.  *Jackson,* 2015 WL 5840073, at *6 *citing*

*Guillory,* 2013 WL 4782211, at *9, *Koch,* 907 F.2d at 531, and *Tucker v. Day*, 969

F.2d 155, 158-159 (5th Cir. 1992) *citing  Little v. Butler*, 848 F.2d 73, 76 (5th Cir.

1988).

Furthermore, petitioner's mere conclusory and unsupported allegations that

any witness committed perjury are insufficient to warrant *habeas* relief.  *See*

*Guillory,* 2013 WL 4782211, at *9 *citing Koch,* 907 F.2d at 530, *United States v.*

*Woods,* 870 F.2d 285, 288 n. 3 (5th Cir. 1989) ("Although *pro se* habeas petitions

must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."), *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir. 1993) (same), *Beazley v. Johnson*, 242 F.3d 248 (5th Cir. 2001) ("conclusory allegations are insufficient to raise a constitutional issue") and *Mayberry v. Davis*, 608 F.2d 1070, 1072 (5th Cir. 1979).

In sum, there simply has been no showing that counsel failed to take appropriate action to stop the use of perjury, as there has been no showing of perjury in the first instance.  Petitioner has therefore failed to demonstrate that counsel's performance was in any way deficient.

**(b) Impeach and Object to Victim's Inconsistent Statements**

Next, petitioner alleges that counsel was ineffective for allegedly failing to impeach and object to the victim's inconsistent statements, presumably those made to Nurse Bonnie Grimsley, and the victim's uncorroborated testimony, presumably about a stab in her bedroom comforter and that she had been hit and raped.

Initially, the Court notes that petitioner fails to allege any basis for counsel to have lodged an objection to the challenged inconsistent testimony of any witness.  Indeed, the Court is unaware of the basis for any such objection.  To the contrary, inconsistencies are the basis for cross-examination, not objection. Failure to lodge a  futile objection does not cause counsel's performance to fall below an objective level of reasonableness.  *See United States v. Preston*, 209 F.3d 783, 785

(5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

Furthermore, contrary to petitioner's present claim, the record reveals that counsel vigorously cross-examined all of the State's witnesses, including the victim, thereby exposing inconsistencies within their testimonies.  More specifically, defense counsel extensively questioned the victim about statements she allegedly made to Nurse Grimsley and Detective Suire, highlighting the inconsistencies between those statements and their reports, as well as her trial testimony, including the date of the rape, whether she called 911, whether the sex was both anally and vaginally, whether she had hidden a knife under a pillow or in her dresser drawer, that petitioner had kissed her and that petitioner hit her while wearing a ring on his finger. [rec. doc. 19-5, pg. 129, 5-6; rec. doc. 195-6, pg. 11-15].  Counsel additionally questioned Detective Suire and the victim about the alleged stab in the bedroom comforter and alleged broken door, highlighting that these facts do not appear in the Detective's report and that no photographs of these items were admitted into evidence. [rec. doc. 19-6, pg. 11 and 13; 19-5, pg. 92-94, 96-100].

In short, the record reveals that counsel vigorously cross-examined each of the State's witnesses.  As such, petitioner has failed to demonstrate that counsel's

performance fell below an objective level of reasonableness.  Petitioner is not entitled to relief on this claim.

## (c) Retention of a Forensic Expert

Petitioner contends that his counsel was ineffective for failing to obtain an independent forensic expert to provide "reliable" DNA testing.  Petitioner is not entitled to relief on this claim because petitioner has failed to affirmatively demonstrate that any deficiency in his counsel's failure to obtain an independent forensic  expert caused him actual prejudice.  In both this court and the state court, petitioner failed to identify a qualified forensic expert capable of testifying favorably on petitioner's behalf, or more specifically, capable of testifying that the DNA testing done by the State's expert was in any way unreliable.  This failure is fatal to his *habeas* claim. *Pierce v. Warden, Louisiana State Penitentiary,* 2009 WL 55937, *39-40 (W.D. La. 2009) (and cases cited therein[5]); *Wilson v. Cain*,

---

[5]*Earhart v. Johnson*, 132 F.3d 1062, 1067-1068 (5th Cir. 1998) ("Earhart's failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to his *habeas* claim."); *Evans v. Cockrell*, 285 F.3d 370, 377-378 (5th Cir. 2002) (petitioner presented no evidence of the results of scientific tests yielded and thus his unsupported claims failed to demonstrate reasonable doubt concerning his guilt or that his counsel deprived him of a fair trial); *Crane v. Johnson*, 178 F.3d 309, 315 (5th Cir. 1999) ("[E]ven assuming that trial counsel erred in failing to seek the appointment of a confidential mental health expert, Crane has not shown how he suffered prejudice from this failure. Crane produced no persuasive psychiatric evidence in the district court that if produced at trial, would have undermined confidence in the resulting verdict.); *Cockrell v. Dretke*, 88 Fed.Appx. 34, 38 (5th Cir. 2004) (petitioner failed to satisfy his burden because no experts substantiated petitioner claims); *Brigham v. Cockrell*, 2002 WL 1776933 at *4 (N.D. Tex. 2002) *citing Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("petitioner has failed to identify a qualified expert capable of testifying on this subject. . . " and the court cannot even begin to analyze ineffective assistance of counsel claim without affirmative showing of missing evidence or testimony); and *Gibson v. Dretke*, 2003 WL 22287516, *5 (N.D. Tex.

2006 WL 3759686, *19 and fn. 18 (W.D. La. 2006) (and cases cited therein); *Noel v. Cain*, 2006 WL 3949335, *9 and fn. 9 (W.D. La. 2006) (and cases cited therein); *Guidry v. Cain*, 2005 WL 1330133, *9 (W.D. La. 2005) (and cases cited therein); see also *United States v. Bernard*, 762 F.3d 467, 473 (5th Cir. 2014) (analyzing a failure to call an expert as an uncalled witness claim).

Although petitioner speculates as to the content of the unidentified expert's testimony, he fails to affirmatively demonstrate that such testimony would not only have been available, but also would have been sufficiently exculpatory to have undermined confidence in the resulting verdict.  Such speculative, hypothetical, conclusory and self-serving allegations of what an unidentified expert might have said are insufficient to warrant *habeas* relief.  *See Bernard*, 762 F.3d at 473; *Pierce,* 2009 WL 55937, *at 40 (and cases cited therein[6]).  Moreover,

---

2003) ("Gibson has failed to show a reasonable probability that an independent expert witness would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial).

[6]*Lovett v. State*, 627 F.2d 706, 709-710 (5th Cir. 1980); *Brigham,* 2002 WL 1776933 at *4 (other than speculating. . . petitioner offers no evidence that any coercive, suggestive, or otherwise inappropriate techniques were used in this case.  Without such evidence, the Court cannot conclude that the testimony of an expert would have affected the outcome of the trial."), *Gibson*, 2003 WL 22287516 at *5; *Price v. Dretke*, 2003 WL 22519439, *6 (N.D. Tex. 2003)*, Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir.1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ. . . ."); *Buckelew v. United* States, 575 F.2d 515, 521 (5th Cir. 1978); *Boyd v. Estelle,* 661 F.2d 388, 390 (5th  Cir.1981); *Green,* 160 F.3d at 1043; and *Sayre,* 238 F.3d at 635.

petitioner's self serving conclusory suggestion that with the testimony of an independent forensic expert the outcome of petitioner's trial would have been different "fall[s] far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635; see also *Lamb*, 179 F.3d at 358, *supra*.

Furthermore, petitioner has failed to show that counsel's alleged failure was deficient.  Petitioner's counsel thoroughly and effectively cross-examined Bethany Harris of the Acadiana Crime Lab regarding her examination of the evidence submitted, undermining her testimony regarding the sufficiency of her testing and accuracy of her findings.  Counsel highlighted that Ms. Harris had not tested a second sample taken from the comforter for DNA to verify if it was from a person other than petitioner, and verified that there were no protocols or procedures were in the case file.  He additionally confirmed that no seminal fluid was found on a sanitary napkin taken from the victim, or the vaginal, rectal or external swabs contained in the rape kit. [rec. doc. 19-5, pg. 62, 65, 67, 69-70].  In the absence of any competent evidence that testing or examination by an independent forensic expert would have resulted in findings contrary to those testified to by Ms. Harris at trial, the undersigned cannot find that counsel's decision not to request testing by an independent forensic expert was objectively unreasonable.

Finally, given Ms. Harris' testimony, it is unlikely that an independent forensic expert would have contradicted her conclusions.  Rather, the testimony of

49

an additional forensic expert would most likely have merely confirmed Ms. Harris' findings, thus strengthening the State's case.  Similar decisions made in order to avoid the risk of compounding unfavorable evidence against the defendant have been held not to amount to attorney error.  *Wilson v. Cain*, 2006 WL 3759686, at *20 *citing Thompson v. Cain*, 161 F.3d 802, 813-814 (5th Cir. 1998).  Moreover,  it is often more effective to elicit testimony from the State's expert in support a defense argument that the prosecution has not proved its case, than to present such evidence through an expert paid for and retained by the defense.  Indeed, the Supreme Court has similarly opined stating that it is sometimes is better to try to cast a "pervasive suspicion of doubt" over the strength of the State's case, rather than "to strive to prove a certainty that exonerates." *Richter*, 562 U.S. at 109, 131 S.Ct. at 790.

For these reasons, petitioner has not demonstrated *Strickland* prejudice, nor has he shown deficient performance, as defense counsels' treatment of the forensic evidence was entirely reasonable.  Petitioner's claim that his counsel was ineffective for failing to obtain an independent forensic expert is without merit.

### (d) Failure to Subpoena Witnesses

Petitioner alleges that counsel was ineffective for failing to subpoena defense witnesses to discredit and impeach the victim's testimony.  More

specifically, petitioner alleges that defense counsel should have called the following witnesses:   J.W., the victims's minor boyfriend with whom the victim was allegedly having sex and who's erect penis allegedly appears in a text messaged photograph on the victim's phone; Edith Campbell, the mother of the baby who the victim was holding prior to the rape, who petitioner speculates was, contrary to the testimony of the victim, at the residence at the time of the rape; Eldridge Harrison, the boyfriend of the victim's older sister, who petitioner alleges would have testified that the victim was coerced  to say that petitioner raped her; Detective Jason Hebert regarding what he heard on the victim's cell phone; and Detective R.J. Thibodeaux regarding the photographs that he allegedly took of the victim's residence during the execution of a search warrant.

Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of  the content of a prospective witness' testimony are largely speculative. *Gregory v. Thaler*, 601 F.3d 347, 352-353 (5th Cir. 2010) *citing  Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) and *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Bernard,* 762 F.3d at 473; *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) *citing Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th

Cir. 1985),  *Murray v. Maggio,* 736 F.2d 279, 282 (5ᵗʰ Cir. 1984), *United States v.*

*Cockrell,* 720 F.2d 1423, 1427 (5ᵗʰ Cir. 1983), and *Buckelew v. United States*, 575

F.2d 515, 521 (5ᵗʰ Cir. 1978); *Evans v. Cockrell*, 285 F.3d 370, 377(5ᵗʰ Cir. 2002).

"[W]ithout a specific, affirmative showing of what the missing evidence or

testimony would have been, a habeas court cannot even begin to apply *Strickland*'s

standards because it is very difficult to assess whether counsel's performance was

deficient, and nearly impossible to determine whether the petitioner was

prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18

F.3d 1208, 1221 (5ᵗʰ Cir. 1994).

 Moreover, where the only evidence of a missing witness's testimony is from

the defendant, courts view such claims with great caution.  *Sayre,* 238 F.3d at 636

*citing Lockhart,* 782 F.2d at 1282, *Marler,* 777 F.2d at 1010,  *Murray,* 736 F.2d at

282, *Cockrell,* 720 F.2d at 1427, and *Buckelew* , 575 F.2d at 521.  Thus, "[a]

prisoner's bald conclusory assertion that [favorable] witnesses were not called

does not serve to 'overcome the strong presumption that his counsel's actions were

reasonable.'" *Sayre,* 238 F.3d at 636 citing *Marler,* 777 F.2d at 1010.  Further, to

demonstrate the requisite *Strickland* prejudice, the petitioner must show not only

that the witness' testimony would have been favorable, but also that the witness

was available and willing to testify at trial. *Alexander*, 775 F.2d at 602; *Boyd v.*

*Estelle*, 661 F.2d 388, 390 (5ᵗʰ Cir. 1981).

Petitioner fails to meet this standard.  He does not show, by competent evidence, what the witnesses' testimony would have been, and petitioner's mere speculation is insufficient to justify *habeas corpus* relief.  Petitioner fails to demonstrate through the presentation of competent evidence that the testimony of these witnesses would have been favorable to the defense or that any of these witnesses was available and willing to testify at trial.  To the contrary, the record suggests the opposite.  It is not likely that the victim's boyfriend, a boyfriend of the victim's family member or a friend of the victim's family would have provided any favorable testimony on petitioner's behalf.

Furthermore, as noted previously, by not calling additional law enforcement personnel, defense counsel was able to use the alleged missing evidence to argue that Detective Suire's testimony was uncorroborated by physical evidence and to support defense counsel's argument that the State had not proven its case.  Under the circumstances, the challenged inaction may be considered sound trial strategy which was not "so ill chosen that it permeates the entire trial with obvious unfairness.'" *See Strickland*, at 689; *Martinez,* 404 F.3d at 885; *Cavitt*, 550 F.3d at 440 *quoting Crane*, 178 F.3d at 314.

For these reasons, federal *habeas* relief is not warranted with respect to this claim.

**(e) Failure to Investigate**

Petitioner contends that he received ineffective assistance of counsel because counsel failed to investigate the facts, evidence and allegations against petitioner by not visiting with petitioner face to face for two years while he was in jail.

Under *Strickland*, counsel need only provide reasonable professional assistance.  *Cullen v. Pinholster*, 563 U.S. 170 , 131 S.Ct. 1388, 1406–07, 179 L.Ed.2d 557 (2011) (discussing *Strickland* and post-*Strickland* cases). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler,* 647 F.3d 535, 541 (5th Cir. 2011) *citing Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) *quoting United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Even if counsel did not visit with petitioner face to face as petitioner alleges, the record in this case is clear that counsel investigated and challenged all of the relevant complained of factual issues and  alleged inconsistencies in the statements and testimony of the State's witnesses in this case by cross-examination of the victim, Nurse Grimsley, Detective Suire and the expert witnesses who testified at trial.  More specifically, by cross-examination of the State's witnesses

and direct examination of petitioner and the victim's aunt, defense counsel fully explored all issues regarding an alleged motive for petitioner to have fabricated a story against petitioner, the source of semen on, and stabbing of, the comforter retrieved from the victim's bedroom, and the inconsistencies in the evidence and testimony regarding both the alleged rape and use of force by petitioner.  Indeed, from the record before this Court, it appears that counsel made virtually every challenge to the evidence which was available to petitioner.  Counsel then skillfully summarized all of this evidence during closing, arguing that the State had not met its burden of proof to demonstrate that petitioner had raped the victim. Petitioner's claim of ineffective assistance of counsel therefore fails the first *Strickland* prong.

Petitioner has not shown how a face to face meeting with counsel would have changed the outcome of his case.  More specifically, he has not shown what further investigation would have revealed, nor has he shown how further investigation or additional challenges would have helped if a face to face meeting had occurred.  Petitioner merely speculates that he would have benefitted from more extensive investigation and additional challenges to the evidence.  Such speculation, however, does not satisfy petitioner's burden.  *See Sayre, supra.* Petitioner therefore has not satisfied the second *Strickland* prong.

**(f) Dismissal of Nurse Grimsley**

Petitioner next faults counsel for allowing Nurse Grimsley to be dismissed following her testimony, thereby allegedly precluding the defense from eliciting favorable testimony about inconsistencies in the victim's statements to her and an opportunity for cross-examination.

The record reflects that the State called Nurse Grimsley in its case in chief. [rec. doc. 19-4, pg. 121-128; 19-5, pg. 1-15].  Thereafter, defense counsel thoroughly cross-examined Nurse Grimsley. [rec. doc. 19-5, pg. 15-36].  During cross-examination, defense counsel explored Nurse Grimsley's notes, her SANE report, and the history given by the victim, confirming the victim stated the date and time of the sexual assault as Tuesday morning at 6:30 a.m., that she had been vaginally and anally assaulted, that she had been kissed on the mouth, that petitioner had ejaculated vaginally without the use of a condom, that she did not state that petitioner touched her with his hands,  and that she related that petitioner burst in her room through the locked door and stabbed her bed.  [rec. doc. 19-5, pg. 1-20, 27-31, 34-37].

Defense counsel later used these facts that he had established from the testimony of Nurse Grimsley, during cross-examination of the victim, to highlight the inconsistencies in petitioner's statements to the Nurse and her trial testimony.

56

More specifically, defense counsel got the victim to admit that she didn't remember the time of day the rape occurred since she told Detective Suire Tuesday night and the Nurse note indicates Tuesday morning, that she told the Nurse she retrieved the knife from her dresser drawer as opposed to from under her pillow, that she didn't know if her bedroom door was locked, that she didn't tell the Nurse that she had been hit in the face while petitioner was wearing a large ring, that she didn't tell the Nurse that she had been vaginally and anally assaulted, and that she hadn't said that she had been kissed.  [rec. doc. 19-5, pg. 129, 5; 19-6, pg. 11-15].

In light of the above, petitioner has failed to demonstrate prejudice as a result of counsel's agreement to allow Nurse Grimsley to be dismissed following her testimony, as there was simply no reason for counsel to refuse to release her. The record clearly establishes that defense counsel fully cross-examined Nurse Grimsley, and in so doing, elicited favorable testimony about inconsistencies in the victim's statements to her, which testimony was used during cross-examination of the victim. Petitioner has not demonstrated a reasonable probability that further examination of Nurse Grimsley during presentation of his case in chief would have changed the outcome of petitioner's trial; a mere possibility of a different outcome is insufficient to establish prejudice. *Sayre*, 238 F.3d at 635; *Lamb*, 179 F.3d at 359.  Petitioner is therefore not entitled to relief with respect to this claim.

**(g) Motion in *Limine***

Petitioner alleges that counsel was ineffective for failing to successfully prosecute his motion *in limine* for admission of evidence regarding the victim's sexual relationship with her minor boyfriend J.W. contained in the victim's cellular telephone, including text messages of a sexual nature and a texted photograph of J.W.'s erect penis.

For these reasons set forth above with respect to petitioner's arguments regarding application of the Louisiana rape shield statute, petitioner has not demonstrated counsel's alleged failure caused him prejudice.  As previously found, the trial court's ruling did not render petitioner's trial fundamentally unfair, and there simply is no reasonable probability that the verdict might have been different had the Court granted the Motion and allowed the sexual details of the relationship between the victim and her boyfriend to have been admitted.  *Strickland*, 466 U.S. at 691-692;  *Sayre*, 238 F.3d at 635. This is particularly the case given that defense counsel was able to present  motive evidence through the testimony of the victim and the victim's aunt, Gwendolyn Campbell.  Moreover, defense counsel was apparently permitted to ask the victim to view the text messaged photograph in question and state on the record that the image was not of  petitioner, but rather the victim's ex-boyfriend, J. W. [rec. doc. 19-5, pg. 13, rec. doc. 19-6, pg. 7-9].

58

**(h) Mistrial**

Lastly, petitioner alleges that counsel was ineffective by failing to successfully obtain a mistrial because of the State's alleged failure to provide photographs taken at the victim's residence during the execution of a search warrant.

For these reasons set forth above with respect to petitioner's substantive claim challenging the trial court's denial of a mistrial, petitioner has not demonstrated counsel's alleged failure caused him prejudice under *Strickland*.   As previously found,  petitioner has not established that the denial of his motion for a mistrial made his trial fundamentally unfair, or, that in light of the overwhelming evidence of petitioner's guilt discussed in detail above, that there was a reasonable probability that the grant of a mistrial would have resulted in a different verdict. These same reasons mandate a finding that petitioner has not  established *Stickland* prejudice.  This is particularly the case given that the denial of a mistrial based on the State's alleged discovery violation benefitted petitioner.  As noted above, the denial allowed defense counsel to argue that Detective Suire's testimony was uncorroborated by physical evidence and supported defense counsel's argument that the State had not proven its case.  As such, there is no reasonable probability that the verdict might have been different had the Court

59

granted petitioner's Motion for mistrial.  *Strickland*, 466 U.S. at 691-692;  *Sayre*, 238 F.3d at 635.  Therefore this claim has no merit.

## VI.  Failure to Hold an Evidentiary Hearing

To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal *habeas corpus* proceeding.   In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court . . . ." *Taylor v. Cain*, 2010 WL 6620876, *12 (W.D. La. 2010) *citing Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law.  *Id. citing Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and *Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state *habeas* proceeding are not cognizable under 28 U.S.C. § 2254. *Id.* (and cases cited therein including  *Moore v. Dretke*, 369 F.3d 844, 846 (5th  Cir. 2004), *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir.), *cert. denied*, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Kidd v. Keith*, 2014 WL 463056, *5 (W.D. La. 2014) (citations

omitted).[7] Accordingly, any such claim is without merit.

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

---

[7]Further, with respect to the standard of review and entitlement to a federal hearing, the Fifth Circuit has recognized that a full and fair hearing does not necessarily require live testimony, and has repeatedly found that a "paper" hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying his claims, where as here, the trial court and the state *habeas* court were one and the same.  *See Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000) *citing  Perillo v. Johnson*, 79 F.3d 441, 446-447 (5th Cir. 1996).

District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.   **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 14th day of December, 2015.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**

COPY SENT:

DATE:   12/15/2015
BY:        EFA
TO:        RTH
              pj